**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BOBBY S. DUTTA,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br>*Defendant-Appellee.* | No. 16-17216<br><br>D.C. No.<br>3:14-cv-04292-CRB<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, Senior District Judge, Presiding

Submitted March 14, 2018[*]
San Francisco, California

Filed July 13, 2018

Before: Richard A. Paez and Sandra S. Ikuta, Circuit
Judges, and Eric N. Vitaliano,[**] District Judge.

Opinion by Judge Vitaliano

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Eric N. Vitaliano, United States District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY***

### Fair Credit Reporting Act / Standing

The panel affirmed the district court's summary judgment in favor of the defendant in an action under the Fair Credit Reporting Act.

The plaintiff alleged that the defendant violated the FCRA's procedural requirement that a prospective employer provide a job applicant with a copy of his consumer credit report, notice of his FCRA rights, and an opportunity to challenge inaccuracies in the report "before taking any adverse action based in whole or in part on the report."

The panel held that the district court did not err in considering a declaration filed with the defendant's summary judgment reply papers because the plaintiff failed to object and thus waived any challenge to the admissibility of the declaration.

Following *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017), the panel held that the plaintiff lacked Article III standing. The plaintiff showed that the statutory provision was established to protect his concrete interests in ensuring that employment determinations are not affected by incorrect credit information. He did not, however, demonstrate how the specific violation of 15 U.S.C.

---

*** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 1681b(b)(3)(A) alleged in the complaint actually harmed or presented a material risk of harm to him.

## COUNSEL

James A. Francis, David A. Searles, John Soumilas, and Jordan M. Sartell, Francis & Mailman P.C., Philadelphia, Pennsylvania; Deborah L. Raymond, Law Offices of Deborah L. Raymond, Del Mar, California; Robert S. Sola, Robert S. Sola P.C., Portland, Oregon; Micah S. Adkins, The Adkins Firm P.C., Birmingham, Alabama; for Plaintiff-Appellant.

Tiffany L. Powers, Lisa H. Cassilly, and Brooks A. Suttle, Alston & Bird LLP, Atlanta, Georgia; Douglas R. Hart and Jennifer B. Zargarof, Sidley Austin LLP, Los Angeles, California; for Defendant-Appellee.

## OPINION

VITALIANO, District Judge:

Bobby S. Dutta appeals the district court's grant of summary judgment to State Farm Mutual Automobile Insurance Company ("State Farm") on his claim that State Farm violated provisions of the Fair Credit Reporting Act of 1970 ("FCRA"). The relevant FCRA provisions require a prospective employer to provide a job applicant with a copy of his consumer credit report, notice of his FCRA rights, and an opportunity to challenge inaccuracies in the report "before taking any adverse action based in whole or in part on the report." 15 U.S.C. § 1681b(b)(3)(A). In granting State Farm's motion for summary judgment, the district

court did not reach the merits of Dutta's claim because it determined that Dutta failed to establish an injury-in-fact, and, as a consequence, lacked Article III standing. Dutta argues that the district court erroneously applied relevant case law regarding Article III standing and also erred in relying upon facts set forth only in a declaration that State Farm submitted as an exhibit to its reply brief. We disagree with both arguments and affirm.

## I.

FCRA was enacted in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). By 1996, though, Congress became concerned that FCRA had so enabled "employers to obtain consumer reports on current and prospective employees" that employees might be "unreasonably harm[ed] . . . if there [were] errors in their reports." S. Rep. No. 104-185, at 35 (1995); *see also* S. Rep. No. 108-166, at 5–6 (2003) (noting that in 1996 Congress recognized "the significant amount of inaccurate information that was being reported by consumer reporting agencies and the difficulties that consumers faced getting such errors corrected"). Responding to these concerns, Congress adopted remedial amendments requiring employers to provide job applicants with a copy of their credit report and to afford job applicants the opportunity to respond to the report before taking any adverse action based on it. *See* S. Rep. No. 104-185, at 35. The relevant amendment is codified at 15 U.S.C. § 1681b(b)(3)(A), and reads, in pertinent part:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action

shall provide to the consumer to whom the report relates—

(i) a copy of the report; and

(ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau [of Consumer Financial Protection] under section 1681g(c)(3) of this title.

FCRA provides, further, that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer." 15 U.S.C. § 1681n(a).

Dutta's sole claim against State Farm falls squarely within the confines of the amendment. On March 3, 2014, Dutta applied for employment with State Farm through the company's Agency Career Track ("ACT") hiring program. As a preliminary step on the ACT pathway to hiring, Dutta was required to, and did, sign an authorization permitting State Farm to obtain his consumer credit report. Consumer credit reports are a critical component in State Farm's decision-making process when evaluating applications in the ACT program. State Farm examines the 24-month credit history of every ACT applicant, viewing it as an indicator of the applicant's practical ability to market financial and insurance-related products and services. As relevant here, if the applicant's credit report indicates a charged-off account greater than $1000 or three or more 90-day late payments,

the applicant is disqualified from continuing in the ACT program.[1]

There is no dispute that Dutta was denied admission to the ACT program and that his poor credit history was the cause of his disqualification. Dutta's grievance is that the credit report obtained by State Farm contained errors, which State Farm considered without providing him sufficient notice under FCRA. He claims that, on March 11, 2014, State Farm employee Roberta Thomas phoned him and told him that, because of a charged-off debt and two loan delinquencies, his employment application was rejected and that the decision was final.[2] Three days later, on March 14, 2014, Dutta received a pre-adverse action notice, dated March 11, 2014 ("Statutory Notice"), which enclosed a copy of the credit report. The cover letter instructed Dutta to contact State Farm "within five days" if the report contained any inaccurate or incomplete information. Dutta followed those instructions by contacting State Farm on March 17, 2014, to dispute the report's accuracy. Specifically, he stated that although the charged-off debt listed in the report was dated February 28, 2014, which would be within State Farm's 24-month look back period, he had not made a payment on that debt since 2010—well outside the 24-month period. He also explained that the past delinquencies were modified mortgage loans and that he had made trial payments "much earlier than what was reported in the credit report." The next day, on March 18, 2014, a State Farm

---

[1] Clearing this hurdle, however, does not mean that the applicant will be hired. Although candidates who meet the guidelines for acceptance will move on to the next phase of the ACT program, they are not guaranteed employment with State Farm.

[2] State Farm does not deny that Thomas spoke with Dutta but denies that she told him the decision was final.

employee informed Dutta by email that he was now deemed withdrawn from the ACT program.

Dutta subsequently brought this action for damages, alleging that State Farm denied his employment application based on his credit report without providing him sufficient notice under FCRA. State Farm moved for summary judgment on July 25, 2016, and later attached the Declaration of Bridgette Beasley ("Beasley Declaration"), a State Farm employee, to its reply papers. Dutta did not object in the district court to the consideration of the Beasley Declaration nor did he request an opportunity to file a sur-reply to it. Relying on facts in the Beasley Declaration, the district court granted summary judgment to State Farm. The court concluded that, in the absence of "an injury in fact," Dutta lacked standing to sue on the FCRA violation he had alleged. Dutta timely appealed.

## II.

The district court had jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.[3] We have jurisdiction under 28 U.S.C. § 1291. This court reviews de novo the district court's decision to grant summary judgment. *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1142 (9th Cir. 2002).

---

[3] Although we affirm the district court's determination that it lacked subject matter jurisdiction over Dutta's claim due to lack of standing, "a trial court does have jurisdiction to determine its own jurisdiction." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

III.

A.  The Propriety of the Record

Dutta takes level aim at the district court's consideration of and reliance upon the Beasley Declaration, which was the only source of admissible proof as to why Dutta's credit report would have disqualified him from acceptance in the ACT program.  Dutta contends that the district court's reliance on the Beasley Declaration was improper under Ninth Circuit precedent since the declaration was attached to State Farm's summary judgment reply papers and he was given no opportunity to respond to it.  We disagree.

It is a basic principle that a party appearing before a court is charged with the understanding of that court's rules of procedure.  The district court's rules of practice permit the filing of affidavits and declarations in reply to opposition papers.  N.D. Cal. Civ. L. R. 7-3(c).  Where the opposing party believes he has been unfairly disadvantaged by a new factual matter included in a reply affidavit or declaration, the practice rules provide a mechanism to seek relief.  The district court's Rule 7-3(d) provides the aggrieved party with the opportunity to object to the district court's consideration of the newly submitted evidence or to request leave to file a sur-reply opposition to it.  N.D. Cal. Civ. L. R. 7-3(d).[4]

---

[4] N.D. Cal. Civ. L. R. 7-3(d)(1) provides:

> If new evidence has been submitted in the reply, the opposing party may file and serve an Objection to Reply Evidence, which may not exceed 5 pages of text, stating its objections to the new evidence, which may not include further argument on the motion. The Objection to Reply Evidence must be filed and served

Plainly, the practice rules recognize the potential inequities that might flow from the injection of new matter at the last round of briefing.  At the same time, the fact that a ground to object to that new matter is available does not command that the objection be sustained.  Indeed, in the context of summary judgment, it may be in the interests of judicial economy to overrule an objection to late-filed dispositive evidence.  In such circumstances, a sustained objection does not dispose of the new matter for all time.  Rather, the new matter will likely hibernate until it winds its way back at trial.  Understanding the potential for unfairness inherent in an unusual submission of new factual matter, the practice rules contemplate relief for the opposing party, but such relief is not limited to simply striking the new matter from consideration.  Mitigation of any unfairness, following objection, may take the form of granting the objecting party leave to file a sur-reply opposition to the new matter.  *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond.") (alteration in original) (citation omitted); *SEC v. Sabrdaran*, 252 F. Supp. 3d 866, 889 (N.D. Cal. 2017) (overruling objection to new evidence submitted in reply papers where the court provided the opposing party with "an opportunity to file a supplemental submission responding" to the new evidence).

Ultimately, and dispositive of Dutta's objection to the district court's consideration of the Beasley Declaration,

not more than 7 days after the reply was filed. Fed. R. Civ. P. 6(d), which extends deadlines that are tied to service (as opposed to filing), does not apply and thus does not extend this deadline.

Dutta did the one thing that a party claiming to be aggrieved by an improper reply submission may not do—he did nothing. If a party does not object to or challenge the improper submission of new evidence before the district court, the party who fails to object has "waived any challenge on the admissibility of [the] evidence." *Getz v. Boeing Co.*, 654 F.3d 852, 868 (9th Cir. 2011) (no error in district court's reliance on new evidence submitted in reply paper where the party failed to object).

As the record makes manifest, Dutta sat on his hands in the face of the new facts set forth in the Beasley Declaration. State Farm submitted the Beasley Declaration on September 22, 2016. At no time after that submission did Dutta object in the district court to the admissibility of the new matter nor did he request an opportunity to offer a sur-reply. It was not until his opening brief was filed in this appeal that Dutta objected. Consequently, there was no error in the district court's consideration of the Beasley Declaration; Dutta waived any challenge to its admissibility by not objecting to it. *See Getz*, 654 F.3d at 868.

B.  Article III Standing

This appeal is another installment in the development of the jurisprudence evolving from the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) (*Spokeo I*). As relevant here, *Spokeo I* held that in order to satisfy Article III's standing requirement, a plaintiff seeking damages for the violation of a statutory right must not only plausibly allege the violation but must also plausibly allege a "concrete" injury causally connected to the violation. *Id.* at 1549. In the absence of a plausible concrete injury, Dutta cannot establish standing to sue.

Embedded in the Constitution's limitation on the exercise of judicial power to "Cases" and "Controversies," U.S. Const. art. III, §§ 1, 2, is the doctrine of standing, which restricts "the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo I*, 136 S. Ct. at 1547. A plaintiff may not bring a generalized grievance, but rather must "show 'a personal stake in the outcome of the controversy.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). To demonstrate standing, a plaintiff must plausibly plead facts to establish the following "three elements": (1) that he "suffered an injury in fact," (2) that there is "a causal connection between the injury and the conduct complained of," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and quotations omitted).

The presence of an injury in fact is the "[f]irst and foremost" element a plaintiff must show to satisfy standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). The pleaded injury must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotations omitted). To be "particularized," "the injury must affect the plaintiff in a personal and individual way." *Id*. at 560 n.1. To be "concrete" the injury "must actually exist,"— that is, it must be "real" and "not abstract" or purely "procedural"—but it need not be tangible. *Spokeo I*, 136 S. Ct. at 1548–49 (quotations and citations omitted).

Two years ago, the Supreme Court had occasion to clarify the nature of an injury that will satisfy standing's "concrete" injury requirement in the context of a different

FCRA provision that seemed to create statutory standing for the private prosecution of its violation. *Id.* The Court explained that, in order to determine if an intangible harm meets the "concrete" injury requirement, courts must "consider whether an alleged intangible harm [that is the object of the statutory claim] has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" and "the judgment of Congress." *Id.* at 1549. In simple terms, the fact that Congress has created a statutory right does not automatically and always confer Article III standing for a plaintiff to sue in federal court for a plausibly claimed breach of it. *Spokeo I* would go on to state that, although Congress may "'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law,'" Congress's identification of such harms "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* (quoting *Lujan*, 504 U.S. at 578) (alteration in original); *see also Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (*Spokeo II*) ("[T]he mere fact that Congress said a consumer . . . may bring such a suit does not mean that a federal court necessarily has the power to hear it."). In short, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo I*, 136 S. Ct. at 1549.

Accordingly, the plausible pleading of a flat out violation of a statutory provision will not necessarily support a civil law suit in federal court since "a bare procedural violation [of a law creating that right], divorced from any concrete harm" will not constitute an injury-in-fact as demanded by Article III. *Id.*; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural

right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."); *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) ("[E]ven where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest."). Providing a real world setting for such procedural violations, *Spokeo I* observed that,

> [f]or example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Spokeo I*, 136 S. Ct. at 1550 (emphasis added). At the same time, courts must remain alert that, "the risk of real harm" caused by the violation of a procedural right may be sufficient to establish an injury in fact. *Id*. at 1549. "[A] plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id*.

On remand from the Supreme Court, in *Spokeo II*, we considered how courts should evaluate whether a concrete harm based on the procedural violation of a statute exists. We concluded that courts must "ask: (1) whether the statutory provisions at issue were established to protect [the

plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in [the] case actually harm, or present a material risk of harm to, such interests." *Spokeo II*, 867 F.3d at 1113. In making the first inquiry, we ask whether Congress enacted the statute at issue to protect a concrete interest that is akin to a historical, common law interest. The second inquiry "requires some examination of the *nature* of the specific alleged [violations] to ensure that they raise a real risk of harm to the concrete interests [the statute] protects." *Id*. at 1116. In other words, we must consider whether, in the case before us, the procedural violation caused a real harm or a material risk of harm. Using this approach, Dutta's claim as pleaded—i.e., that State Farm violated his statutory rights to information concerning use of his consumer credit report and an opportunity to discuss the report with State Farm prior to any adverse action being taken against him—must be evaluated to determine whether it presents a concrete harm.[5]

As to the first step of the inquiry, Congress enacted FCRA to ensure "fair and accurate credit reporting." *Spokeo I*, 136 S. Ct. at 1545 (quoting 15 U.S.C. § 1681(a)(1)). Elaborating on its mission, we have explained that "FCRA 'was crafted to protect consumers from the transmission of inaccurate information about them' in consumer reports." *Spokeo II*, 867 F.3d at 1113 (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)); *see also Syed v. M-I, LLC*, 853 F.3d 492, 497 (9th Cir. 2017)

---

[5] Though Dutta characterizes the FCRA violation as a substantive one, we conclude that Dutta plausibly alleges only the violation of procedural rights with respect to the timing of when he was given his credit report and when State Farm made its adverse decision, which are properly analyzed under *Spokeo II*.

(noting that § 1681b(b)(2)(A) "promotes error correction by providing applicants with an opportunity to warn a prospective employer of errors in the report before the employer decides against hiring the applicant on the basis of information in the report"). In this vein, § 1681b(b)(3) protects a job applicant's interest in curbing the dissemination of false information in a manner that could cause harm to employment prospects. Section 1681b(b)(3) thereby gives a job applicant a procedural protection that is akin to pre-deprivation due process: notice and the opportunity to contest erroneous information in a credit report before the prospective employer takes an adverse action based on such information.

This interest in ensuring that employment determinations are not affected by incorrect credit information is real and not "purely procedural." *Spokeo II*, 867 F.3d at 1113. Given Congress's "concern[] that the ability of employers to obtain consumer reports on current and prospective employees may unreasonably harm employees if there are errors in their reports," S. Rep. No. 104-185, at 35, it is reasonable to infer that Congress intended by its enactment of § 1681b(b)(3) to provide a means to guard against that threat by not requiring "any additional showing of injury." *Spokeo II*, 867 F.3d at 1114. Furthermore, the dissemination of false information potentially harmful to future employment is analogous to common law concerns with defamation or libel that causes material damage—a harm "that has traditionally been regarded as providing a basis for a lawsuit in [both] English [and] American courts." *Spokeo I*, 136 S. Ct. at 1549; *see also Spokeo II*, 867 F.3d at 1114–15 (noting relationship between curbing inaccurate credit information and defamation and libel).

Having made a showing that "the statutory provision[] at issue [was] established to protect his concrete interests," Dutta must also demonstrate how the "specific" violation of § 1681b(b)(3)(A) alleged in the complaint actually harmed or "present[ed] a material risk of harm" to him. *Spokeo II*, 867 F.3d at 1113. For example, in *Spokeo II*, we determined that a successful showing had been made that a credit reporting agency's dissemination of a report that inaccurately described the plaintiff's marital status, age, current employment, education, and wealth were not mere technical violations. *Spokeo II*, 867 F.3d at 1117. Rather, such inaccuracies presented a real risk to his future employment prospects. *Id*.

On the other side of the ledger, though just as violative of an FCRA provision affording an important procedural protection, in *Bassett v. ABM Parking Services, Inc.*, we held that the issuance of an unredacted receipt did not create a material risk of harm in the form of identity theft or the invasion of privacy sufficient to confer standing where the consumer retained possession of the receipt and no one else had viewed it. 883 F.3d 776, 782–83 (9th Cir. 2018). Building upon this logic in a recent case, we concluded that the plausibly alleged violation of that same provision, by printing the expiration date of plaintiff's debit card on a receipt, could demonstrate a concrete harm when the plaintiff alleged that she had subsequently suffered from identity theft. *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 766 (9th Cir. 2018). The plaintiff, nevertheless, lacked standing because she did not plausibly allege that the harm was fairly traceable to the defendant's violation, rendering her allegations nothing more than a "bare procedural violation." *Id*. at 767.

Like the plaintiff in *Bassett*, Dutta fails to establish Article III standing empowering the district court to adjudicate his federal statutory claim against State Farm because, though he plausibly pleads a violation of § 1681b(b)(3)(A), he fails to demonstrate actual harm or a substantial risk of such harm resulting from the violation. More specifically, he does plead that State Farm violated the statute by providing the Statutory Notice three days after taking adverse action against him by deciding that he was ineligible for the ACT employment program. He also alleged that there were incorrect and misleading entries in the credit report, and, in violation of § 1681b(b)(3)(A), he was deprived of an opportunity to correct them. Further refining focus, in addition to the alleged inaccurate reporting of the modified status of mortgage loans, going straight for the alleged inaccuracies fatal to his ACT application, Dutta complained that a charged-off debt exceeding $1000 was inaccurately reported as occurring on February 28, 2014 instead of some time in 2010. He pegged his claims of inaccuracy to the date he stopped making payments. But, the consumer credit report did not purport to establish when Dutta stopped making payments. The transaction date disqualifying Dutta from the ACT program was the date the creditor charged off the debt as uncollectable. As to the date of that transaction, as noted in the consumer credit report, there is not a whisper of challenge by Dutta in the record.[6] Significantly, its accurate reporting meant that the charged-

---

[6] Accepting as true Dutta's claim that he stopped paying the debt in 2010, the Internal Revenue Code permits an unpaid creditor to take "as a deduction any debt which becomes worthless within the taxable year." 26 U.S.C. § 166(a)(1). Dutta's lender, and not Dutta, had the right to decide when to charge off his debt. This means that the charged-off debt was, indeed, properly dated and accurately reported, given the absence of any allegation to the contrary, as of the date reported by the creditor.

off debt fell within State Farm's established 24-month look back period for eligibility to participate in the ACT program.

At bottom, the Beasley Declaration dashed any hope Dutta might have had to assert more than a bare procedural violation of his FCRA statutory right, that is, to assert a concrete injury that would have established his Article III standing to sue State Farm for redress. The Beasley Declaration makes clear that the existence of the charge off within the 24-month ACT look back period alone disqualified Dutta from continuing in the ACT program. That fact made all of the inaccuracies or explanations Dutta wanted to present to State Farm immaterial. None alone or collectively would establish a concrete injury. Consequently, although Dutta made a plausible showing of State Farm's procedural violation of FCRA, he failed to establish facts showing he suffered actual harm or a material risk of harm. Thus, Dutta failed to establish a concrete injury for purposes of the injury-in-fact element of standing. On these facts, the district court correctly determined that Article III standing was wanting.

**AFFIRMED.**