NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

AUG 6 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

STARR INDEMNITY & LIABILITY
COMPANY, substituted for Med-Trans
Corporation; MED-TRANS
CORPORATION,

No. 19-15960

D.C. No. 4:14-cv-02100-BGM

Plaintiffs-Appellants,

MEMORANDUM*

v.

ROLLS-ROYCE CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the District of Arizona
Bruce G. Macdonald, Magistrate Judge, Presiding

Argued and Submitted April 30, 2020
San Francisco, California

Before: WALLACE, GRABER, and COLLINS, Circuit Judges.

Plaintiff Med-Trans Corporation owned a helicopter that suffered damage

during a "hard landing" in Aberdeen, South Dakota on April 14, 2012. Med-Trans

and its insurer, Starr Indemnity and Liability Company (collectively, "Plaintiffs"),

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

brought tort and warranty claims against Defendant Rolls-Royce Corporation ("Rolls-Royce"), alleging that a defect in the third-stage turbine wheel, manufactured by Rolls-Royce, caused the hard landing. In a prior appeal, we held that Texas law applied. *See Starr Indem. & Liab. Co. v. Rolls-Royce Corp.*, 725 F. App'x 592 (9th Cir. 2018). On remand, the district court entered summary judgment in favor of Rolls-Royce. Plaintiffs appealed. Reviewing the district court's order de novo, *United States v. JP Morgan Chase Bank Account*, 835 F.3d 1159, 1162 (9th Cir. 2016), we affirm.

1. Texas's "economic loss rule" serves to "separat[e] the law of torts from the law of contracts" by generally disallowing tort recovery for economic losses, that is, "purely economic damages unaccompanied by injury to the plaintiff or his property." *LAN/STV v. Martin K. Eby Constr. Co., Inc.*, 435 S.W.3d 234, 235, 240 (Tex. 2014) (citation and internal quotation marks omitted). In the product liability context, Texas's economic loss rule precludes tort recovery for damage caused by a product to the "product itself" but not for damage caused to "other property." *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007). While damage by a product to itself may be a physical injury, recovery for such damage is nonetheless barred by the economic loss rule, because the ultimate "loss to the purchaser" is merely a failure to obtain "the benefit of the bargain with the seller." *Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.*, 572

2

S.W.2d 308, 312–13 (Tex. 1978). Applying these principles, we conclude that the district court properly dismissed Plaintiffs' tort claims.

    a. The economic loss rule bars tort recovery for damage to the *helicopter*, because the helicopter was the "product," of which the turbine wheel and engine were merely components. In a case with analogous facts, the Texas Supreme Court held that damage by a component to a product was economic loss that was not recoverable in tort. *See Mid Continent*, 572 S.W.2d at 310–13 (damage to airplane from crash due to missing "lock plate" engine component was economic loss); *see also Pugh v. Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 92 (Tex. App. 2007) ("Texas courts have rejected the argument that damage to a finished product caused by a defective component part constitutes damage to 'other property.'"). The absence of privity of contract between Med-Trans and Rolls-Royce does not preclude application of the economic loss rule. *See Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 78 (Tex. 1977); *Pugh*, 243 S.W.3d at 91. Nor does it matter that the turbine wheel was a replacement part, *see Equistar Chems., L.P. v. Dresser-Rand Co.*, 123 S.W.3d 584, 588–90 (Tex. App. 2003) (applying the economic loss rule to damage caused by replacement parts, given that purchasers of replacement parts can "negotiate for whatever warranty or liability limits they

choose"), *rev'd on other grounds*, 240 S.W.3d 864 (Tex. 2007),[1] nor that the engine in the damaged helicopter had been transferred from another helicopter, *see Grizzly Mountain Aviation, Inc. v. Honeywell Int'l, Inc.*, 2013 WL 5676069, at *1, *6–7 (Tex. App. Oct. 17, 2013).

b. The district court did not decide whether specially installed *medical equipment* aboard the helicopter should be considered "other property" for purposes of the economic loss rule, because the court held that Plaintiffs failed to raise a genuine issue of fact as to whether any such medical equipment was installed on the subject helicopter. We agree.

In moving for summary judgment based on the economic loss rule, Rolls-Royce properly observed that Plaintiffs' complaint alleged damage *only* to the helicopter and not to any *specific* "other property." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). At that point, the burden shifted to Plaintiffs to "'set forth specific facts showing that there [was] a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted); *see also* FED. R. CIV. P. 56(c)(1)(A). Plaintiffs argued that "emergency medical services equipment" that had been installed on the helicopter was also damaged and that the

---

[1] The Texas Supreme Court held that the defendant had failed to preserve the economic-loss-rule issue in the trial court, and it therefore "express[ed] no opinion on that part of the court of appeals' opinion which addresses the rule and its application." 240 S.W.3d at 866 n.2.

4

"other property" exception to the economic loss rule therefore applied. But the only evidence they provided in support of the equipment's installation was a 2004 "invoice" that was not an invoice at all but rather a sales "estimate"—and the estimate was for a *different* helicopter. This document is wholly insufficient to show that any medical equipment was actually installed in the relevant helicopter.[2]

2. Although Plaintiffs brought a claim "for breach of express and/or implied warranty," they did not provide a copy of any written warranty in opposing summary judgment. Rolls-Royce, on the other hand, provided copies of warranties that it claims were delivered with the engine and turbine wheel.[3] We conclude that

---

[2] At oral argument, Plaintiffs' counsel belatedly argued that the record contains sufficient evidence in the form of the helicopter's "minimum equipment list," which was generated four days before the hard landing and which contained two entries in the "component" column labeled "Airmed Inspection." This vague and isolated reference, unsupported by any other evidence to explain its meaning, "'is not enough to create a genuine issue of material fact in order to preclude summary judgment.'" *Trunk v. City of San Diego*, 629 F.3d 1099, 1116 n.17 (9th Cir. 2011) (citation omitted).

[3] Along with its reply in support of its motion for summary judgment, Rolls-Royce submitted an affidavit in which a company employee swore that the written warranties were in fact delivered with the engine and turbine wheel. Plaintiffs argue that the district court should have granted their motion to strike the affidavit as late-filed, but we hold that there was no abuse of discretion. *See Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018) ("[I]n the context of summary judgment, it may be in the interests of judicial economy to overrule an objection to late-filed dispositive evidence."). Rather than striking the evidence, mitigation of the unfairness "may take the form of granting the objecting party leave to file a sur-reply in opposition to the new matter." *Id.* Plaintiffs did object to the new evidence in this case, but they failed to ask for an opportunity to file a response, and on appeal they have not explained what, if any, arguments or new evidence of their own that they would have offered.

the district court properly granted summary judgment to Rolls-Royce on Plaintiffs' warranty claims.

In moving for summary judgment on Plaintiffs' warranty claims, Rolls-Royce met its burden by producing written warranties that (1) had indisputably expired by the time of the hard landing and (2) expressly disclaimed any implied warranties. Rolls-Royce also provided sufficient proof that the warranties were authentic and had been delivered with the products, in light of both the affidavit from the company's employee and the fact that the warranties themselves appeared to apply to the products, based on their text and on the page shape and hole-punch pattern of the engine warranty that matched the logbook in Med-Trans's possession. Plaintiffs did not produce any evidence to rebut the warranties submitted by Rolls-Royce. Summary judgment was properly granted.

**AFFIRMED.**