**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DESCHUTES RIVER ALLIANCE, an
Oregon nonprofit corporation,
    *Plaintiff-Appellant*,

  v.

PORTLAND GENERAL ELECTRIC
COMPANY, an Oregon corporation;
CONFEDERATED TRIBES OF THE
WARM SPRINGS RESERVATION OF
OREGON,
    *Defendants-Appellees.*

No. 18-35867

D.C. No.
3:16-cv-01644-SI

DESCHUTES RIVER ALLIANCE, an
Oregon nonprofit corporation,
    *Plaintiff-Appellee*,

  v.

PORTLAND GENERAL ELECTRIC
COMPANY, an Oregon corporation,
    *Defendant-Appellant*,

  and

No. 18-35932

D.C. No.3:16-cv-
01644-SI

CONFEDERATED TRIBES OF THE
WARM SPRINGS RESERVATION OF
OREGON,
                    *Defendant.*

DESCHUTES RIVER ALLIANCE, an
Oregon nonprofit corporation,
                    *Plaintiff-Appellee*,

v.

PORTLAND GENERAL ELECTRIC
COMPANY, an Oregon corporation,
                    *Defendant*,

and

CONFEDERATED TRIBES OF THE
WARM SPRINGS RESERVATION OF
OREGON,
                    *Defendant-Appellant.*

No. 18-35933

D.C. No.
3:16-cv-01644-SI

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted May 7, 2021
Portland, Oregon

Filed June 23, 2021

Before:  William A. Fletcher, Carlos T. Bea, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge W. Fletcher;
Partial Concurrence and Partial Dissent by Judge Bea

---

## SUMMARY[*]

---

### Fed. R. Civ. P. 19 / Tribal Immunity

The panel reversed the district court's summary judgment in favor of Portland General Electric (PGE) and the Confederated Tribes of the Warm Springs Reservation of Oregon (the Tribe), and remanded with instructions to vacate the judgment and to dismiss a citizen suit in which Deschutes River Alliance (DRA) alleged that PGE was operating the Pelton Round Butte Hydroelectric Project (the Project) in violation of the Clean Water Act (CWA).

PGE and the Tribe co-own and co-operate the Project on the Deschutes River, located partly within the Warm Springs Indian Reservation in Oregon.  The district court denied PGE's motion under Fed. R. Civ. P. 19 to dismiss for failure to join the Tribe as a required party, holding that the Tribe was a required party but feasible to join because the CWA had abrogated the Tribe's sovereign immunity.  DRA filed an amended complaint joining the Tribe as an additional defendant.  The district court held that the Project was not in

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

violation of the CWA and granted summary judgment in favor of PGE and the Tribe.

The panel held that DRA has Article III standing.

The panel held that the Tribe did not waive its sovereign immunity to this suit. The panel wrote that the Tribe's waiver of its immunity when it agreed not to assert sovereign immunity from a suit brought by a party to the Project's Implementation Agreement does not apply to a suit brought by DRA, which is not a party to the Agreement.

The panel held that the CWA did not abrogate the Tribe's sovereign immunity. The panel wrote that the inclusion of "an Indian tribe" in the definition of "municipality" in 33 U.S.C. § 1362(4) (and, in turn, the definition of "person" in 33 U.S.C. § 1362(5)) does not indicate—let alone clearly indicate—that Congress intended in the CWA to subject tribes to unconsented suits.

The panel held that the Tribe is a required party under Fed. R. Civ. P. 19(a)(1)(B)(i) because it has a legally protected interest in the subject of the suit that may be impaired by proceedings conducted in its absence, but that joinder of the Tribe is infeasible because of its Tribal immunity. Noting that PGE and the Tribe have potentially divergent interests, the panel determined under Fed. R. Civ. P. 19(b) that the case cannot proceed in the Tribe's absence. The panel therefore concluded that DRA's suit must be dismissed under Rule 19 for failure to join a required party.

Dissenting in part and concurring in the judgment, Judge Bea joined the majority in most of its holdings, including that the text of the CWA does not evince Congress's clear intent

to abrogate tribal immunity.  He wrote that the Opinion's references to the legislative history of the CWA as additional support for its determination are superfluous and irrelevant.

**COUNSEL**

Daniel M. Galpern (argued), Law Office of Daniel M. Galpern, Eugene, Oregon; J. Douglas Quirke, Oregon Clean Water Action Project, Eugene, Oregon; for Plaintiff-Appellant/Cross-Appellee.

Josh Newton (argued), Karnopp Petersen LLP, Bend, Oregon, for Defendants-Appellees/Cross-Appellants Confederated Tribes of the Warm Springs Reservation of Oregon.

Misha Tseytlin (argued) and Kevin M. LeRoy, Troutman Pepper Hamilton Sanders LLP, Chicago, Illinois; Beth S. Ginsberg, Stoel Rives LLP, Seattle, Washington; James R. George, Portland General Electric Co., Portland, Oregon; for Defendants-Appellees/Cross-Appellants Portland General Electric Company.

Jennifer H. Weddle and Kyle R. Montour, Greenberg Traurig LLP, Denver, Colorado; Derrick Beetso, National Congress of American Indians, Washington, D.C.; Hon. Doreen McPaul, Navajo Nation Attorney General; Paul Spruhan, Assistant Attorney General; Navajo Nation Department of Justice, Window Rock, Arizona; for Amici Curiae National Congress of American Indians, Crow Tribe of Indians, Confederated Salish and Kootenai Tribes, Fort Belknap Indian Community, and Navajo Nation.

Richard M. Glick, P. Andrew McStay Jr., and Alicia J. LeDuc, Davis Wright Tremaine LLP, Portland, Oregon, for Amicus Curiae Idaho Power Company.

**OPINION**

W. FLETCHER, Circuit Judge:

Portland General Electric ("PGE") and the Confederated Tribes of the Warm Springs Reservation of Oregon (the "Tribe") co-own and co-operate the Pelton Round Butte Hydroelectric Project (the "Project") on the Deschutes River, located partly within the Warm Springs Indian Reservation in Oregon. Deschutes River Alliance ("DRA") filed a citizen suit against PGE alleging that PGE was operating the Project in violation of the Clean Water Act ("CWA"). *See* 33 U.S.C. § 1365.

PGE moved under Federal Rule of Civil Procedure 19 to dismiss for failure to join the Tribe as a required party. The district court denied the motion, holding that the Tribe was a required party but feasible to join because the CWA had abrogated the Tribe's sovereign immunity. DRA filed an amended complaint joining the Tribe as an additional defendant. The district court held that the Project was not in violation of the CWA and granted summary judgment in favor of PGE and the Tribe.

We agree with the district court that the Tribe was a required party, but we disagree on the question of the Tribe's sovereign immunity. We hold that the CWA did not abrogate the Tribe's immunity and that the suit should have been dismissed under Rule 19. We therefore do not reach the question whether PGE and the Tribe violated the CWA. We remand with instructions to vacate the judgment and dismiss the suit.

## I.  Background

### A.  The Clean Water Act

The Clean Water Act was enacted in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  The CWA makes it unlawful for any person to discharge any pollutant into navigable waters except as authorized by the Act.  *Id.* § 1311.

Under Section 401 of the CWA, an applicant for a federal license to engage in activity that may result in a discharge of a pollutant must obtain a water quality certification from the relevant State or interstate agency "that any such discharge will comply with the applicable provisions" of the Act.  *Id.* § 1341(a)(1).  A Section 401 certification, or "certificate," attests that the activity will comply with the applicable laws, including State water quality standards and "any other appropriate requirement of State law set forth in such certification."   *Id.*  § 1341(a)(1), (d).   The certificate's requirements become conditions of the federal license or permit.  *Id.* § 1341(d).

The CWA authorizes citizen suits "against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of [] an effluent standard or limitation under this chapter." *Id.* § 1365(a)(1).  An "effluent standard or limitation" includes "a certification under section 1341 of this title."  *Id.* § 1365(f).  A "person" is defined as "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State,

or any interstate body."  *Id.* § 1362(5).  A "municipality" is defined, in turn, as

> a city, town, borough, county, parish, district, association, or other public body created by or pursuant to State law and having jurisdiction over disposal of sewage, industrial wastes, or other wastes, or an Indian tribe or an authorized Indian tribal organization, or a designated and approved management agency under section 1288 of this title.

*Id.* § 1362(4).

## B.  The Project

The Pelton Round Butte Hydroelectric Project is a system consisting of three dams on the Deschutes River in Oregon. The Round Butte Dam, built in 1964, is the farthest upstream, forming Lake Billy Chinook behind it.  Next is the Pelton Dam, forming Lake Simtustus.  Farthest downstream is the Reregulating Dam, forming the Pelton Regulating Reservoir.

Part of the Project is within the Warm Springs Indian Reservation.  The Reservation is home to the Confederated Tribes of Warm Springs, which include the Wasco, Warm Springs, and Paiute tribes.  The Tribe is the legal successor in interest to the Indian signatories of an 1855 treaty reserving the land for their exclusive use.

In 1951, the Federal Power Commission, predecessor to the Federal Energy Regulatory Commission ("FERC"), issued a fifty-year license to PGE for the Project.  In 1980, FERC amended the license to allow the Tribe to construct

power generation facilities in the Reregulating Dam as a joint licensee.

PGE and the Tribe subsequently filed competing applications for a new license. After entering into a Global Settlement and Compensation Agreement, PGE and the Tribe jointly applied to FERC for a new license in 2001. At the same time, they jointly applied for Section 401 certifications from the Tribe's Water Control Board and Oregon's Department of Environmental Quality ("DEQ"). The certifications were issued the following year. PGE and the Tribe also participated in a Settlement Working Group in order to address concerns of various stakeholders about the Project. Their efforts resulted in a Settlement Agreement, approved by FERC in 2005. A key part of the Settlement Agreement was a Fish Passage Plan designed to facilitate the movement of fish through the Project. FERC issued the new license, incorporating the DEQ water quality certification and most of the provisions of the Settlement Agreement.

Pursuant to the DEQ certification and the Settlement Agreement, a Selective Water Withdrawal facility ("SWW") at Round Butte Dam was completed in 2009. The SWW draws water from both the surface and bottom of Lake Billy Chinook to meet water quality standards downstream and to facilitate the passage of fish.

## C.  DRA's Citizen Suit

DRA is a nonprofit advocacy organization established to protect the lower Deschutes River, formed shortly after the SWW began operation. Its members are concerned about the effect of the SWW's operation on water quality in the river.

On August 12, 2016, DRA brought suit against PGE under 33 U.S.C. § 1365, alleging that the Project was in violation of its Section 401 certificate.  Defendant PGE moved to dismiss under Rule 19 for failure to join the Tribe as a required party.  The Tribe, appearing as amicus, argued in support of the motion.  The district court denied the motion, holding that the Tribe was a required party but feasible to be joined because the CWA had abrogated the Tribe's sovereign immunity.  DRA then filed an amended complaint joining the Tribe as an additional defendant.

On August 3, 2018, the district court granted PGE and the Tribe's motions for summary judgment, holding that the Project was not violating its Section 401 certificate.  DRA appealed, and PGE and the Tribe cross-appealed.  We have jurisdiction under 28 U.S.C. § 1291.

## II.  Standards of Review

"Both Article III standing and sovereign immunity are threshold jurisdictional issues that we review de novo." *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 765–66 (9th Cir. 2018).

We generally review a district court's Rule 19 determinations for abuse of discretion.  *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 969 (9th Cir. 2008).  However, "[t]o the extent that the district court's determination whether a party's interest is impaired involves a question of law, we review de novo."  *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1098 (9th Cir. 1994).

## III.  Discussion

PGE and the Tribe argue that DRA lacks Article III standing and that the CWA did not abrogate the Tribe's sovereign immunity.  We hold that DRA has Article III standing.  We hold further that the CWA did not abrogate the Tribe's sovereign immunity and that the district court should have dismissed DRA's suit under Rule 19.  We therefore do not reach the question whether the Project violates the CWA.

## A.  Article III Standing

The Supreme Court tells us that there are three core requirements for Article III standing.  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  PGE and the Tribe argue that DRA lacks Article III standing because it has failed to state a judicially redressable claim. They contend that DRA has not explained what available relief would improve water quality in the river, and that the district court is therefore without power to grant effective relief.

DRA's arguments are unavailing.  To satisfy Article III, a plaintiff "need only show a substantial likelihood that the relief sought would redress the injury."  *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (quotation marks and citation omitted).  DRA seeks an injunction requiring PGE and the Tribe to comply with their Section 401 certificate, which it interprets as requiring compliance with particular water quality criteria.  If the district court agreed with DRA's argument on the merits, there is a substantial likelihood that

an injunction requiring defendants meet these criteria would redress DRA's alleged injury by improving the water quality of the lower Deschutes River.  *See Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185–86 (2000) ("It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress."); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 318 (1982) (reading the CWA "as permitting the exercise of a court's equitable discretion . . . to order relief that will achieve compliance with the Act").  DRA has thus carried its "relatively modest" burden of demonstrating redressability. *See M.S.*, 902 F.3d at 1083.

## B.  Tribal Sovereign Immunity

"Suits against Indian tribes are . . . barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991).  The Tribe and PGE argue that the district court erred in concluding Congress abrogated tribal immunity in the CWA.  DRA argues that the Tribe waived its sovereign immunity through the Project's Implementation Agreement, and that the district court was correct in holding that the CWA abrogated its immunity.

We can quickly dispose of DRA's waiver argument. DRA did not raise this argument in the district court.  The argument is without merit in any event.  "There is a strong presumption against waiver of tribal sovereign immunity." *Demontiney v. United States ex rel. Dep't of Interior, Bureau of Indian Affs.*, 255 F.3d 801, 811 (9th Cir. 2001).  DRA

argues that the Tribe waived its immunity when it agreed not to assert sovereign immunity from a suit brought by a party to the Project's Implementation Agreement.  DRA is not a party to the Agreement, and the Tribe's waiver does not apply to a suit brought by a non-party.

DRA's abrogation argument is more serious, though it ultimately fails.  "[T]o abrogate immunity, Congress must unequivocally express that purpose.  That rule of construction reflects an enduring principle of Indian law:  Although Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends to undermine Indian self-government."  *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 790 (2014) (quotation marks, alterations, and citations omitted).  "[A] proper respect both for tribal sovereignty itself and for the plenary authority of Congress in this area cautions that we tread lightly in the absence of clear indications of legislative intent."  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 60 (1978).  We must be able to say with "perfect confidence that Congress meant to abrogate . . . sovereign immunity."  *Daniel*, 891 F.3d at 774 (quotation marks omitted); *see Dellmuth v. Muth*, 491 U.S. 223, 231 (1989) ("[T]he salient point in our view is that it cannot be said with perfect confidence that Congress in fact intended . . . to abrogate sovereign immunity, and imperfect confidence will not suffice. . . .").

The text of the CWA does not provide the required "perfect confidence."  *See id.*  Section 1365—the citizen-suit provision—provides that "any citizen may commence a civil action on his own behalf . . . against any *person* (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution)."  33 U.S.C. 1365(a)

(emphasis added).  Section 1365 is the only section of the CWA dealing explicitly with sovereign immunity.  Section 1365 makes no mention of Indian tribes or tribal immunity.

Clause (i) explicitly waives the United States's sovereign immunity.  Clause (ii) does not mention States specifically. Instead, it uses the umbrella term "any other [*i.e.*, non-federal] governmental instrumentality or agency," allowing suit against such entities only "to the extent permitted by the eleventh amendment."   States themselves are, of course, protected by the Eleventh Amendment (or, to be precise, by the sovereign immunity principle for which the Amendment stands).  *See Alden v. Maine*, 527 U.S. 706 (1999).  State entities such as state hospitals are also protected by the Amendment.   *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89 (1984).  Non-state entities such as counties are not protected by the Amendment. *See Lincoln Cnty. v. Luning*, 133 U.S. 529 (1890).

Section 1362(5) defines a "person," as "an individual, corporation, partnership, association, *State*, *municipality*, commission, or political subdivision of a State, or any interstate body."  *Id.* § 1362(5) (emphasis added).  Section 1362(4), in turn, defines a "municipality" as a

> city, town, borough, county, parish, district, association, or other public body created by or pursuant to State law and having jurisdiction over disposal of sewage, industrial wastes, or other wastes, or *an Indian tribe or an authorized Indian tribal organization*, or a designated and approved management agency under section 1288 of this title.

*Id.* § 1362(4) (emphasis added).

DRA argues, and the district court agreed, that the reference to "an Indian tribe" in § 1362(4) is sufficient to abrogate tribal immunity because § 1365 provides that a citizen may commence an action "against any person"; "person" is defined in § 1362(5) to include "municipality"; and "municipality" is defined in § 1362(4) to include "an Indian tribe." The presence of "an Indian tribe" in § 1362(4), however, can hardly be said to be a clear and unequivocal expression of Congressional intent to abrogate when Congress expressly dealt with sovereign immunity in  1365, but failed to mention tribes in that section.

Indian tribes and States are both "persons" within the meaning of § 1365(a), given the definitional chains in § 1362(4) and (5). But it does not follow that unconsenting Indian tribes and States are subject to citizen suits under the CWA. We have already concluded as much for States. *See Nat'l Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 423 (9th Cir. 1996); *see also Burnette v. Carothers*, 192 F.3d 52, 57 (2d Cir. 1999). There is little reason to conclude to the contrary for Indian tribes. Because Indian tribes and States both may waive their sovereign immunity and thus consent to suit under the CWA, the inclusion of Indian tribes and States in the definition of "person" is not meaningless. *See*, *e.g.*, *C & L Enter., Inc. v. Citizens Band Potawatomi Tribe of Okla.*, 532 U.S. 411, 423 (2001) (tribal waiver); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (state waiver).

We therefore conclude that the inclusion of "an Indian tribe" in the definition of "municipality" (and, in turn, in the definition of "person") does not indicate—let alone clearly

indicate—that Congress intended in the CWA to subject tribes to unconsented suits.

DRA points to the district court's reliance on *Blue Legs v. United States Bureau of Indian Affairs*, 867 F.2d 1094 (8th Cir. 1989), *Osage Tribal Council ex rel. Osage Tribe of Indians v. United States Dep't of Labor*, 187 F.3d 1174 (10th Cir. 1999), and *Miller v. Wright*, 705 F.3d 919 (9th Cir. 2013), in support of its argument that the CWA abrogates tribal immunity. None of these decisions changes our reading of the CWA.

In *Blue Legs*, Oglala Sioux tribal members brought suit against the Environmental Protection Agency, other federal government agencies, and their own Tribe under the Resource Conservation and Recovery Act ("RCRA"), complaining of fourteen dangerous garbage dumps on the Reservation. 867 F.2d 1094, 1095. The Eighth Circuit held that Congress clearly indicated in RCRA its intent to abrogate tribal immunity. *Id.* at 1097. Under RCRA, as under the CWA, citizens may bring suit "against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution)." 42 U.S.C. § 6972(a)(1)(A). As in the CWA, "person" is defined to include municipality, and municipality is defined in turn to include "an Indian tribe or authorized tribal organization." *Id.* § 6903(15), (13)(A). Finally, as in the CWA, neither tribes nor tribal immunity are mentioned in the citizen-suit provision.

The Eighth Circuit's analysis was relatively brief. It followed the definitional chain from person to municipality to tribe, and relied on a House Report that included "specific examples of harm to be avoided, including Indian children

playing in dumps on reservations." *Blue Legs*, 867 F.2d at 1097. The court did not consider the significance of the absence of tribes from the citizen-suit provision where sovereign immunity was explicitly addressed. Further, the court cited our decision in *State of Washington Dep't of Ecology v. E.P.A.*, 752 F.2d 1465 (9th Cir. 1985), in which we held that RCRA gives regulatory authority over tribes to the United States, but does not provide such authority to states. *Blue Legs*, 867 F.2d at 1097. In citing that case, the Eighth Circuit ignored the distinction between federal regulatory authority over a State or tribe, which does not implicate sovereign immunity from suit, and an unconsented suit under federal law against a State or tribe, which does. *See*, *e.g.*, *Alden*, 527 U.S. at 754–55.

We are not convinced that the Eighth Circuit in *Blue Legs* reached the correct conclusion in holding that RCRA abrogates tribal sovereign immunity. *See*, *e.g.*, Subtitle D Regulated Facilities; State/Tribal Permit Program Determination of Adequacy; State/Tribal Implementation Rule (STIR), 61 Fed. Reg. 2584, 2588 (proposed Jan. 26, 1996, by the Environmental Protection Agency) ("[By including Indian tribes in the definition of municipalities in RCRA], Congress apparently intended to make explicit that Indian Tribes could receive funds and assistance when available in the same manner as municipal governments. . . . There is no indication in the legislative history that Congress intended to abrogate any sovereign Tribal authority by defining them as 'municipalities' under RCRA."). But even if the Eighth Circuit reached the correct result, we note a difference in the legislative histories of RCRA and the CWA. In support of its reading of RCRA, the Eighth Circuit cited Congress's specifically expressed concern with the hazards created by garbage dumps on Indian reservations. The

legislative history of the CWA contains no comparable expressed concern.  The likely explanation for inclusion of Indian tribes in the definition of municipalities in the CWA is that Congress intended to make tribes eligible for federal grants, with no thought of subjecting tribes to unconsented suits.  *See*, *e.g.*, S. Rep. No. 92-414, *reprinted in* 1972 U.S.C.C.A.N. 3668, 3742 ("The definition of municipalities is clarified to make clear that public bodies eligible for grants under this Act includes associations formed under State law for the purpose of dealing with water problems . . . as well as operating agencies established and approved under section 209.").

In *Osage Tribal Council*, the Tenth Circuit held that the enforcement provision for whistleblowers in the Safe Drinking Water Act ("SDWA") is "unambiguous," establishing that Congress had "unequivocally waived tribal immunity."  187 F.3d at 1182.  (In a slip of the pen, the Tenth Circuit mistakenly wrote "waived" rather than "abrogated.")  Even assuming the Tenth Circuit's holding was correct, which we need not decide, the case for abrogation in the SDWA is stronger than in the CWA.  Under the SDWA enforcement provision, "[a]ny employee who believes that he has been discharged or otherwise discriminated against by any person" may file a complaint with the Secretary of Labor.  42 U.S.C. § 300j–9(i)(2)(A).  The SDWA then defines "person" to include "municipality" and "municipality" to include "an Indian tribe."  *Id.* § 300f(12), (10).  Unlike the citizen-suit provision in the CWA, however, the enforcement provision of the SDWA does not mention the sovereign immunity of the United States or the Eleventh Amendment.  Because the SDWA does not have a provision that deals specifically with sovereign immunity without mentioning

tribal immunity, there is more reason to think the SDWA abrogates tribal sovereign immunity than does the CWA.

In *Miller*, we held that the federal antitrust laws do not abrogate tribal sovereign immunity.  In the course of our discussion, we noted and distinguished the decisions *Blue Legs* and *Osage Tribal Council* without explicitly endorsing their holdings.  We wrote only that the antitrust laws do not "employ the sort of expansive language that we and other circuits have held to unequivocally abrogate tribal sovereign immunity."  *Miller*, 705 F.3d at 926.  Our brief reference to *Blue Legs* and *Osage Tribal Council* was only "in passing without due consideration of the alternatives, [and] done as a prelude to another legal issue that command[ed] the panel's full attention."  *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) (alterations and quotation marks omitted). The distinction drawn in our discussion in *Miller* thus does not require us to conclude that *Blue Legs* and *Osage Tribal Council* were correctly decided.

An intention to abrogate tribal sovereign immunity must be "unmistakably clear."  *Dellmuth*, 491 U.S. at 228; *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1056 (9th Cir. 2004) (noting "[i]dentical language is used by courts in determining whether Congress has abrogated the sovereign immunity of states" and tribes).  We do not have "perfect confidence" that Congress intended to abrogate the sovereign immunity of Indian tribes from citizen suits under the CWA. *See Daniel*, 891 F.3d at 774.  "In the absence here of any unequivocal expression of contrary legislative intent, . . . suits against the tribe under the [CWA] are barred by its sovereign immunity from suit."  *Santa Clara Pueblo*, 436 U.S. at 59.

## C.  Dismissal for Failure to Join a Required Party

Rule 19(a) requires joinder of a party whose presence is necessary to ensure complete relief among the existing parties, or to protect a party whose interests would be impaired or impeded were the action to proceed without that party.  If joinder is not feasible, Rule 19(b) requires dismissal when the action cannot proceed "in equity and good conscience" without the required party.  Under Rule 19, "[w]e first determine whether an absent party is a required party; then whether joinder is feasible; and finally whether the case can fairly proceed in the party's absence." *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020).

The district court concluded that the Tribe is a required party because it has a legally protected interest in the subject of the suit that may be impaired by proceedings conducted in its absence.  Fed. R. Civ. P. 19(a)(1)(B)(i).  We agree with the district court.  A decision that the Project is being operated in violation of its Section 401 certificate could well impair the Tribe's interest as co-owner and co-operator of the Project, and any relief would risk adversely affecting the Tribe's interests.

Joinder of the Tribe is infeasible because of its sovereign immunity.  We must therefore determine under Rule 19(b) whether the case can proceed in the Tribe's absence.  "The balancing of equitable factors under Rule 19(b) almost always favors dismissal when a tribe cannot be joined due to tribal sovereign immunity." *Jamul Action Comm.*, 974 F.3d at 998; *see Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996) ("If the necessary party is immune from suit, there may be very little need for balancing Rule 19(b) factors because

immunity itself may be viewed as the compelling factor." (quotation marks and citation omitted)). "[T]here is a 'wall of circuit authority' in favor of dismissing actions in which a necessary party cannot be joined due to tribal sovereign immunity—'virtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether [an alternative] remedy is available, if the absent parties are Indian tribes invested with sovereign immunity.'" *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 857 (9th Cir. 2019) (alteration in original) (quoting *White v. Univ. of Cal.*, 765 F.3d 1010, 1028 (9th Cir. 2014)).

This case is no exception. DRA argues that PGE could adequately represent the Tribe were the suit to proceed in its absence. But PGE and the Tribe, as the district court noted, have potentially divergent interests. PGE's interests in this litigation begin and end with the Project. By contrast, for the Tribe, the stakes of this litigation extend beyond the fate of the Project and implicate sovereign interests in self-governance and the preservation of treaty-based fishing rights throughout the Deschutes River Basin. Equity and good conscience thus do not permit DRA's suit to proceed when the action involves protected interests of the Tribe that could be impaired in its absence. We therefore conclude that DRA's suit must be dismissed under Rule 19 for failure to join a required party.

## Conclusion

We hold that the CWA did not abrogate the Tribe's sovereign immunity. The Tribe's sovereign immunity requires dismissal of this suit, in which DRA challenges the operation of a large hydroelectric project co-owned and co-

operated by the Tribe, and located partly on the Tribe's reservation. We reverse the district court's grant of summary judgment. We remand with instructions to vacate the entry of judgment and to dismiss the suit for failure to join the Tribe.

**REVERSED and REMANDED with instructions.**

BEA, Circuit Judge, dissenting in part, concurring in judgment:

I join the majority in most of its holdings, but I believe the majority is wrong in one regard. On the issue of tribal immunity, the majority is correct that the text of the Clean Water Act ("CWA") does not evince Congress's clear intent to abrogate tribal immunity. That reasoning is dispositive, and is the basis for my concurrence in the judgment on that point. However, the majority then cites the legislative history of the CWA as additional support for its determination.

I do not consider legislative history a useful nor proper means to interpret legislation, or to distinguish the CWA from other statutes. It is neither "legislative," because it is prepared by unelected bureaucrats, and neither enacted nor presented to the executive, nor "history," but congealed propaganda, picked by interested advocates, not by balanced historians. It is likely not to have even been read by any legislators. *Hirschey v. FERC*, 777 F.2d 1, 7–8 n.1 (D.C. Cir. 1985) (Justice Scalia quoting an exchange between Senators Dole and Armstrong during a floor debate on a tax bill). I would apply the negative-implication canon *expressio unius est exclusio alterius*. "[This doctrine] as applied to statutory

interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018) (internal quotations omitted).  The citizen-suit provision of the CWA, 33 U.S.C. § 1365, deals with the sovereign immunity of the federal government and of the states of the union.  It makes no mention of the Indian Tribes.  Thus, that provision does not affect the Tribes' sovereign immunity.

The Opinion's references to legislative history are superfluous and irrelevant.