**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DENNIS J. SEIDER, as Trustee of the
Seider Family Trust; LEAH SEIDER, as
Trustee of the Seider Family Trust,

          Plaintiffs-Appellants,

v.

CITY OF MALIBU,

          Defendant-Appellee.

No.   21-55293

D.C. No.
2:20-cv-08781-PA-MRW

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted March 24, 2022
Pasadena, California

Before: GRABER and COLLINS, Circuit Judges, and CHOE-GROVES,** Judge.
Dissent by Judge COLLINS.

    Plaintiffs Dennis and Leah Seider have sued Defendant the City of Malibu,

challenging as unconstitutional certain provisions of the City's Local

---

    \*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    \*\*     The Honorable Jennifer Choe-Groves, Judge for the United States
Court of International Trade, sitting by designation.

Implementation Plan ("LIP"): the provision that forbids signs that "purport to identify the boundary between State tidelands[] and private property," the provision that establishes criteria for the City to apply when making permitting decisions, and the provision that requires an applicant to agree to indemnify the City should a third party sue the City for its decision to approve the application. The district court dismissed the sign-related claims for failure to join the California Coastal Commission ("Commission"), a required party, and dismissed the indemnification-related claims for lack of ripeness. We affirm in part, vacate in part, and remand.

1. The Commission has primary jurisdiction over Plaintiffs' proposed permit application. Although the City has primary jurisdiction over many such applications, the Commission instead has primary jurisdiction over an application for a "[d]evelopment that would lessen or negate the purpose of any specific permit condition." LIP § 13.10.2(B)(2). In 1976, Plaintiffs' predecessors received a permit; it contained as a condition an easement for the public use of 25 feet of the beach above the mean high tide line. The Commission issued a notice of violation to Plaintiffs in 2020, concerning a "Private Beach" sign. The notice stated that one purpose of the 1976 permit was to maximize access by the public to public areas of the beach. The proposed new sign, although legally accurate, would "lessen" the

2

purpose of maintaining maximum public access to the public parts of the beach because (a) the location of the mean high tide line fluctuates, is not visible, and is unknown to most members of the public, and (b) even if members of the public knew in theory where the mean high tide line is, they would be unable to discern the boundary without resort to sophisticated methods of measurement that they do not bring with them to the beach. Thus, beachgoers who want to remain on public lands would stay as far away as possible from Plaintiffs' house and would forgo using public portions of the beach.

Because the Commission has primary jurisdiction, the district court did not abuse its discretion by determining that the Commission is a required party. See Deschutes River All. v. Portland Gen. Elec. Co., 1 F.4th 1153, 1158 (9th Cir. 2021) (stating that we generally review a Rule 19 decision for abuse of discretion). Nonetheless, the court did not follow the strictures of Rule 19(a), which provides that a required party "must be joined," Fed. R. Civ. Pro. 19(a)(1), and that, if not "joined as required, the court must order that the person be made a party," Fed. R. Civ. Pro. 19(a)(2). We therefore vacate the dismissal of Claims One and Two and remand with instructions to require the Commission to be joined as a defendant or, if it cannot be joined, to require the individual Commissioners to be joined as

3

defendants.[1]  Only if none of those entities or persons can be joined is dismissal proper.  Fed. R. Civ. Pro. 19(b).

2.  The indemnification provision that Plaintiffs challenge in Claims Three and Four would arise only if the City were the entity to rule on Plaintiffs' permit application.  As we have held, the Commission has primary permitting jurisdiction in this case.  For that reason, we affirm the dismissal of Claims Three and Four.

3.  We need not, and do not, reach any other issues in the case, including the issues discussed in Parts I-B and II of the dissent.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.  The parties shall bear their own costs on appeal.**

---

[1]  We express no view on the merits of Claims One and Two.

4



*Seider v. City of Malibu*, No. 21-55293

COLLINS, Circuit Judge, dissenting:

I would reverse the district court's dismissal of the complaint filed by Plaintiffs-Appellants Dennis and Leah Seider against the City of Malibu, and I would remand for further proceedings to address the merits of those claims. Because the majority concludes otherwise, I respectfully dissent.

## I

In my view, the majority errs in upholding the district court's conclusion that the California Coastal Commission (or perhaps its membership[1]) is a necessary party that must be joined in this suit.

## A

The majority rests its conclusion on the premise that, as a matter of state law, the Commission has the relevant "primary jurisdiction" to issue the sign permit that is the subject of the Seiders' first and second causes of action under 42 U.S.C. § 1983.[2] *See* Mem. Dispo. at 2–3. I agree that, if the Commission had

---

[1] Because the parties have not addressed the point, I express no view as to whether the Commission would enjoy any form of immunity against the claims in this case.

[2] Specifically, the Seiders' first cause of action challenges, as a content-based violation of their First Amendment rights, § 3.15.3(X) of the City's Local Implementation Plan ("LIP"), which "restricts signs that 'purport to identify the boundary between State tidelands and private property.'" Their second cause of action challenges, as an unconstitutional prior restraint, § 3.15.4(C) of the LIP, which the Seiders allege impermissibly confers unbridled discretion to City officials to deny sign permits.

exclusive jurisdiction to issue the relevant permit, it would be a necessary party. In those circumstances, "complete relief" could not be afforded in the Commission's absence, and the Commission would have an interest that would be impaired if it were not joined. *See* FED. R. CIV. P. 19(a)(1)(A), (B)(i). But the Commission does *not* have original jurisdiction to issue the permit, and the majority is wrong in holding otherwise.

California Public Resources Code § 30166.5 directed the Commission to draft and adopt a "local coastal program" ("LCP") for the relevant coastal zone in the City of Malibu and further provides that, after the LCP is adopted, "the *City of Malibu* shall immediately assume coastal development permitting authority, pursuant to this division." *See* CAL. PUB. RES. CODE § 30166.5(b) (emphasis added). Indeed, the California Legislature specifically adopted this law requiring the Commission to develop Malibu's LCP—followed by local enforcement by the City—precisely because "the failure of the City of Malibu to prepare and adopt an LCP" had resulted in a situation in which the Commission was "forced to act as the agency to approve or deny every development permit within Malibu, from minor projects like a new garage, to more controversial projects, like seawalls." *City of Malibu v. California Coastal Comm'n*, 18 Cal. Rptr. 3d 40, 44 (Ct. App. 2004) (citation omitted). Under the plain language of § 30166.5, the permit that the Seiders would need in order to post a sign in accordance with the LCP would thus

2

be issued by the City of Malibu, and not by the Coastal Commission. Given that the City has the relevant jurisdiction to issue the necessary permit, and given that Malibu's LCP includes an LIP that both (1) requires permits for signs, which may be issued only pursuant to the criteria set forth in LIP § 3.15.4(C); and (2) forbids issuing permits for signs that "purport to identify the boundary between State tidelands, and private property," *see* LIP § 3.15.3(X), the City is the proper defendant in a suit under 42 U.S.C. § 1983 to challenge the constitutionality of § 3.15.3(X) and § 3.15.4(C).

The majority nonetheless holds that the permit at issue here falls within the narrow range of permits over which the Commission, not the City, retains jurisdiction. Under § 13.10.2(B)(2) of the LIP, the Commission retains authority over "coastal development permits" where the development "would lessen or negate the purpose of any specific permit condition, . . . any recorded offer to dedicate or grant of easement . . ., of a Commission-issued coastal permit." This provision is applicable, the majority concludes, because in 1976 the Seiders' predecessors obtained a Commission-issued permit that contained a condition requiring the recording of a "deed restriction . . . granting lateral public access up to 25 [feet] inland from the mean high tide line." According to the majority, *any* sign that would *truthfully* recite the limit of this easement "would lessen or negate the purpose" of the easement and, as a result, any permit for such a sign must be

3

issued by the Commission.  *See* Mem. Dispo. at 2–3.  This argument fails.

In support of its broad reading of the Commission's jurisdiction, the majority relies on the Commission's April 2020 letter asserting that a prior sign that the Seiders posted without a permit violated the 1976 Commission-issued development permit.  *See* Mem. Dispo. at 2.  But the Seiders' prior sign differed in a critical respect that the majority overlooks.  The prior sign stated "PRIVATE BEACH" and was affixed to the crossbeams of the deck attached to the Seiders' house.  As the Commission's letter aptly noted, the placement of *that* sign in *that* position effectively "represent[ed] that the beach *seaward of the property* is private" (emphasis added)—*i.e.*, that the *entire* beach was private.  That sort of legally inaccurate sign obviously interferes with the purpose of the easement, and it is therefore unsurprising that the Commission asserted jurisdiction over it.  But the same cannot be said of a "legally accurate" sign.  *See* Mem. Dispo. at 2.

The majority nonetheless relies on the extraordinary theory that the very vagueness of the condition that the Commission itself forced on the Seiders' predecessors now means that any legally accurate sign would interfere with public access and require the Commission's approval.  That is, because the Commission *required* that the boundary of the easement be determined based on the "mean high tide line," which the majority says "fluctuates" and requires "sophisticated methods of measurement," the majority concludes that a truthful recitation of that

4

boundary would cause beachgoers to err on the side of caution and forgo using some unspecified "public portions of the beach." *See* Mem. Dispo. at 3. But it cannot be a legitimate purpose of the 1976 easement to attempt to allow public access to private property *not* covered by the easement, and so there can be no sense in which a truthful sign can be said to interfere with any permissible purpose of that easement. The Commission therefore does not have original jurisdiction over the Seiders' permit.[3]

**B**

The alternative grounds offered by the district court and by the City for requiring joinder of the Commission are also without merit.

The district court concluded that, because the Commission *drafted* the Malibu LCP, including the two sign provisions challenged here, it "has an interest in defending the constitutionality" of that language. But I am aware of no authority—and the district court cited none—suggesting that the governmental entity that *drafted* a law is for that reason a necessary party in a suit seeking to enjoin its enforcement. On the contrary, the necessary defendants in a suit seeking to enjoin the enforcement of a law are the agencies or persons responsible for *enforcing* that law against the plaintiffs, and not the body that acted in a legislative

---

[3] If and when the Commission or its members are joined to this litigation, it may turn out that they do not agree with the majority's view of their own jurisdiction under state law. They would not be bound by the majority's ruling on that point, which was rendered in their absence and without the benefit of their input.

capacity by drafting it. *Cf. Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.*, 297 F.3d 253, 264 (3d Cir. 2002) (noting that defending the constitutionality of legislation is "generally regarded as an executive function"). The district court noted that the City has declined to defend the constitutionality of the relevant provisions at issue here, but that does not change the result. The fact that those in charge of enforcing a law decline to defend its constitutionality may give rise to a sufficient state-law interest on the part of the drafters that would support intervention, but it does not make them a necessary party to this action who *must* be joined if possible. *Cf. id*. at 257–58 (holding that, after the state Attorney General declined to defend the challenged statute and the legislature therefore intervened as a defendant, the legislature was liable for attorneys' fees after it lost the case).

I also conclude that the Commission's potential role in hearing any appeal in the permitting process does not require that it be joined as a defendant. In particular, I disagree with the City's contention that, in the absence of the Commission, complete relief cannot be afforded to the Seiders. *Cf.* FED. R. CIV. P. 19(a)(1)(A). The City argues that if it were enjoined from enforcing the two challenged provisions and it then granted the permit, two members of the Commission might conceivably choose to trigger a discretionary appeal and then revoke the permit as having been issued in violation of those provisions. As an

6

initial matter, this argument misapprehends the relief that the Seiders seek in their Complaint, which is merely declaratory and injunctive relief that, if granted, would give them the opportunity to apply for a permit free of the assertedly unconstitutional provisions of the LIP. As the Seiders state in their opening brief, "*none* of the Seiders' requested relief would require Malibu to issue a permit."

But even if the relevant relief for Rule 19 purposes were the actual issuance of a permit, the Commission's joinder would still not be required to effectuate complete relief. On the current record, the hypothetical scenario that the City posits—*i.e.*, a future effort by members of the Commission to overturn a permit issued by the City after the enjoining of the two challenged provisions—is too speculative to warrant the City's joinder. *See Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012) (holding that the speculative possibility of interference with federal rights by other officials "does not mean that complete relief is not possible for the plaintiffs, who seek to enjoin only the named defendants"). In the speculative event that two members of the Commission were to attempt to institute such a discretionary appeal in that particular scenario, then at that time the Seiders could "bring another action against those officials."[4] *Id*.

---

[4] Before deciding whether to take such actions in that scenario, the relevant commissioners would have to decide whether, when confronted with the inevitable

## II

I agree with the majority to the extent that it holds that, if the Commission has original jurisdiction over the permit that the Seiders seek, then the Seiders would lack standing to assert their third and fourth causes of action. Those claims challenge the City's requirement that, in order to apply for such a permit *from the City*, an applicant must agree to assume certain specified obligations to indemnify the City. If the Seiders must instead seek the permit from the Commission, rather than the City, then the Seiders lack standing to assert these two additional claims. But given that I do not agree that the Commission has jurisdiction over the permit at issue, I must address whether the district court correctly dismissed these claims as unripe. It did not.

According to the district court, the Seiders' challenge to the City's indemnification requirement is unripe because they would not suffer an Article III injury-in-fact unless and until the indemnity was actually triggered. Until then, the district court held, "the injury at issue is speculative, or may never occur."

---

litigation that would ensue, they would have a good-faith basis, consistent with Federal Rule of Civil Procedure 11, for defending the constitutionality of the challenged LIP provisions, and they would presumably also consider whether such actions might violate clearly established law so as to forfeit any qualified immunity the commissioners otherwise might enjoy against suits for damages. *Cf. Hafer v. Melo*, 502 U.S. 21 (1991) (holding that state officials may be sued under § 1983 in their personal capacity for damages caused by actions taken by them in their official capacities). These considerations reinforce my view that the hypothetical scenario the City posits is unduly speculative.

8

*Protectmarriage.com—Yes on 8 v. Bowen*, 752 F.3d 827, 838 (9th Cir. 2014). The district court's analysis overlooks the fact that the compelled provision of the indemnity *itself*—in effect, a form of insurance that the City might otherwise have to procure by other means—sufficiently alters the parties' legal rights so as to constitute an Article III injury. That is especially true here, where the Seiders have further alleged that the express requirement to affirmatively assume this uncertain indemnity obligation has burdened their ability to assert, through a permit application, their First Amendment rights. *See Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 954–55 (1984). The fact that they would suffer a *further* injury if the indemnity were later to be triggered does not mean that they have not already suffered an injury by being required to assume the indemnification obligation as the price to assert their First Amendment rights.

*     *     *

The district court therefore erred in dismissing the Seiders' first through fourth causes of action on the grounds that it did. It therefore also erred in declining to exercise supplemental jurisdiction over the Seiders' fifth cause of action under state law. I would remand for further proceedings concerning the merits of these claims.

I respectfully dissent.

9